UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
UNITED STATES OF AMERICA,                          :
                                                   :
                              Plaintiff,           :
                                                   :   MEMORANDUM AND ORDER
                 -against-                         :
                                                   :   18-cv-6840 (ENV) (CLP)
WALTER SCHILLER and DENISE SCHILLER,               :
                                                   :
                              Defendants.          :
-------------------------------------------------------------- x

VITALIANO, D.J.

      Plaintiff the United States of America, at the direction of the acting Attorney General, commenced the instant action to reduce to judgment the federal income tax liabilities of defendants Walter and Denise Schiller. The parties have cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons set forth below, the government's motion is granted and defendants' motion is denied.

Factual and Procedural Background[1]

      The facts giving rise to defendants' underlying tax liabilities are undisputed. On October 15, 2008, the Schillers, a married couple, filed their joint tax return for the 2007 tax year, reporting a tax liability of $91,945.00. Gov't SOF ¶ 1; Defs. CSOF ¶ 1. Defendants did not,

---

[1] The facts are drawn from the complaint, exhibits, affidavits, and Rule 56.1 statements submitted by the parties in connection with the instant motions. Specifically, the Court considers both the government's and defendants' Local Rule 56.1 statement of material facts, *see* Gov't Statement of Material Facts ("Gov't SOF"), Dkt. 22; Defs.' Statement of Undisputed Facts ("Defs. SOF"), Dkt. 23, as well as the parties' responses to their opponent's statement of facts, *see* Gov't Response to Defs.' Statement of Undisputed Facts ("Gov't CSOF"), Dkt. 24; Defs.' Response to Gov't Statement of Undisputed Facts ("Defs. CSOF"), Dkt. 26. Where facts are disputed, "the sources for the claims made in dueling Rule 56.1 Statements" will be considered directly. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015).

however, pay the tax reported on the return. Gov't SOF ¶ 1; Defs. CSOF ¶ 1. As a result, on November 3, 2008, a delegate of the Secretary of the Treasury Department, which oversees the Internal Revenue Service ("IRS"), made assessments against defendants for federal income taxes, penalties, and interest, in the amount of $112,324.18. Gov't SOF ¶ 1; Defs. CSOF ¶ 1.

After an unexplained, nearly decade-long gap, the story as memorialized in the record picks back up on December 7, 2017, when defendants submitted a request to the IRS for an installment agreement, under 26 U.S.C. § 6159, proposing that they pay $361 per month towards their tax liabilities. Gov't SOF ¶ 3; Defs. CSOF ¶ 3. That same day, two transactions appeared on defendants' IRS account.[2] The first stated, "Request for installment agreement pending"; the second, also dated December 7, stated, "Installment agreement granted and active." Gov't Ex. 1 at 4.

The government contends, and defendants do not dispute, that the second entry was "erroneously posted" on the Schillers' account, improperly granting their request before it had been processed. Gov't SOF ¶ 3. Defendants, however, believing at the time that their request had been accepted, began making monthly payments towards their tax liabilities, each in the amount of $361, from January 18, 2018 until July 20, 2018. Gov't Ex. 1 at 4–5; Defs. CSOF ¶ 5. Eventually, in August 2018, a Revenue Officer for the IRS visited defendants' home, after which the Schillers made no further installment payments. Defs. SOF ¶ 4; Gov't CSOF ¶ 4; Defs. Ex. G, Dkt. 23. The Revenue Officer also left defendants a written note that stated: "Levy. Suit to

---

[2] The government submitted as evidence, without objection from defendants, the Schillers' IRS Form 4340, titled "Certificate of Assessment, Payments and Other Specified Matters," which is the "transcript for the account of [the Schillers]" that contains "a true and complete data compilation . . . of all assessments, abatements, credits, refunds, and advanced or unidentified payments," as well as "other specified matters" that appear in IRS records. Gov't Ex. 1, Dkt. 22, at 8.

Reduce Claim to Judgment. In process." Defs. Ex. G.

Next, and central to the instant motions, is the government's admission that, around this time in late 2018, but before October 30, 2018, the IRS referred defendants' case to the Department of Justice ("DOJ"). Defs. Ex. F, Dkt. 22, at ¶ 5. It is unclear from the record when, how, by whom, or to whom the referral was made. The evidence does, however, establish that on September 14, 2018, an entry appeared on defendants' IRS account, stating: "Legal suit pending." Gov't Ex. 1 at 5. Additionally, an IRS form, titled "Request for Installment Agreement – Independent Review Prior to Rejection" and dated September 19, 2018, indicated that the Schillers' proposed installment agreement was rejected on the grounds that, *inter alia*, defendants had the ability to pay the full amount owed through equity in assets. Gov't Ex. 3, Dkt. 22, at 3. The form, signed by the same Revenue Officer who visited defendants' home, also contained a handwritten note stating: "The service is recommending a civil suit to reduce the tax claim to judgment." *Id.*

On October 30, 2018, after the Schillers' case had been referred to DOJ, defendants received a letter from the IRS formally rejecting their request for an installment agreement. Gov't Ex. 2, Dkt. 22. The letter informed defendants that the request was rejected because defendants had "sufficient cash or equity in assets to fully or partially pay the balance owed." *Id*. It also advised that, "in the alternative, to the extent [the Schillers] received a notice accepting [their] installment agreement proposal," the October 30 letter constituted "a formal notice of the termination of that installment agreement because that acceptance was issued by mistake." *Id.*

As noted in the letter, defendants were required to appeal the rejection or termination of the installment agreement by November 29, 2018. *Id*. They failed to do so, and on November 30, 2018, the government initiated this action seeking to reduce to judgment defendants' 2007 federal income tax liabilities. Gov't SOF ¶ 10; Defs. CSOF ¶ 10. The government seeks

3

judgment against Schillers, jointly and severally, in the amount of $102,078.87, plus statutory additions from and after September 30, 2020, including interest pursuant to 26 U.S.C. §§ 6601, 6621, 6622, and 28 U.S.C. § 1961(c).

Cutting through the fog of much belabored motion practice, defendants' sole asserted ground for relief is pegged to their contention that this collection action is barred because the IRS improperly referred their case to DOJ for the commencement of the instant suit before defendants' installment agreement was formally rejected on October 30, 2018, in violation of binding Treasury Regulations. See Defs. MSJ Br., Dkt. 23. The government's cross-motion is also cabined to this issue, naturally, adopting the opposite position and arguing, instead, that regardless of when it is referred, a collection action is proper so long as it is not *commenced* in court while an installment agreement is pending or accepted. See Gov't MSJ Br., Dkt. 22. Indeed, to say that the issue for decision has been crystallized by the parties would be an understatement.

## Legal Standard

Summary judgment shall be granted in the absence of a genuine dispute as to any material fact and upon a showing that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 26 (1986). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of New York*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Courts do not try issues of fact at the summary judgment stage, but instead merely "determine whether there are issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)).

The movant bears the burden of demonstrating there is no genuine dispute as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the motion court will resolve all ambiguities and draw all permissible factual inferences in the light most favorable to the party opposing the motion. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Where the nonmoving party "will bear the burden of proof at trial," it bears the initial procedural burden at summary judgment of demonstrating that undisputed facts "establish the existence of [each] element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322–23. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

When the parties cross-move for summary judgment, the same standard applies. The court is simply required to "determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021). In such situations, "a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). Instead, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## Discussion

Since the enactment of the Internal Revenue Service Restructuring and Reform Act of 1998 ("RRA"), the Internal Revenue Code has imposed restrictions on the government's

5

collection tactics while a taxpayer's request for an installment agreement, *i.e.*, an arrangement under which the taxpayer agrees to pay off their unpaid tax liabilities over a period of time, is pending or in effect. The law and the regulations are clear: 26 U.S.C. § 6331(k)(2) prohibits the IRS from levying (seizing) "the property or rights to property of any person with respect to any unpaid tax" during: (i) the period that a proposed installment agreement for the payment of the unpaid tax is pending with the IRS; (ii) the period that such an installment agreement is in effect; and (iii) the thirty days following either the rejection of a proposed installment agreement or the termination of an existing one. The Treasury Regulations elaborate that, within this context, a "proposed" installment agreement becomes a "pending" one "when it is accepted for processing." 26 C.F.R. § 301.6331-4(a)(2). "The proposed installment agreement remains pending until the IRS accepts the proposal, the IRS notifies the taxpayer that the proposal has been rejected, or the proposal is withdrawn by the taxpayer." *Id.*

Here, the parties agree that defendants' installment agreement was pending, within the meaning of the statute, from December 7, 2017, the date defendants' request was processed, until October 30, 2018, when defendants were notified that their request was rejected. *See* Gov't MSJ Br. at 4; Defs. SOF ¶ 1. Consequently, with plain application of § 6331(k)(2), levy was also undisputedly prohibited during this period.

It is at this point, however, that the parties' positions permanently diverge. A different provision of the Treasury Regulations governing installment agreements, titled "proceedings in court," states that "the IRS will not refer a case to the Department of Justice for the commencement of a proceeding in court, against a person named in an installment agreement or proposed installment agreement, if levy to collect the liability is prohibited by" § 6331(a)(1). 26 C.F.R. § 301.6331-4(b)(2). The regulations do not define or elaborate on the meaning of the term "referral" within this context.

6

While, as noted, the precise date of the IRS's referral in this case is unclear from the record, the government admitted during discovery that "[t]he IRS referred this case to [DOJ] during the period that a levy was prohibited." Defs. Ex. F ¶ 5. Likewise, in its summary judgment briefs, the government acknowledged that "the case was sent to [DOJ] prior to the IRS formally rejecting [] defendants' proposed installment agreement [on October 30, 2018] and therefore appears to be an improper referral." Gov't MSJ Br. at 6; Gov't Sur-Reply, Dkt. 31, at 2–3.

Armed with these seemingly unequivocal acknowledgments of error, defendants seek summary judgment. They argue that the referral of their case to DOJ, while levy to collect their unpaid taxes was undisputedly prohibited, violated the plain language of the Treasury Regulations. That is, in defendants' view, 26 C.F.R. § 301.6331-4(b)(2) unambiguously prohibits the IRS from doing the exact thing it admits it did: authorizing DOJ to bring suit against defendants before the IRS formally notified them that their installment agreement request had been rejected. Defs. MSJ Br. at 7–8.

The government parries that, notwithstanding its admissions, the IRS's concededly "improper" referral does not bar the instant suit. In the government's view, despite the seemingly plain language of the "proceedings in court" Treasury Regulation, this provision does not actually impose any restrictions on the IRS's ability to *refer* cases to DOJ while levy is prohibited; it merely prohibits the government from *commencing* an action in court on a day that levy is prohibited. Gov't Opp. Br., Dkt. 26, at 4. In other words, so long as there is no active or pending installment agreement at the time the action is filed, this regulation is satisfied.

As a prefatory matter, it is worth noting that, as the parties' briefs make clear and the Court's own independent research confirms, no other courts have meaningfully discussed the import of 26 C.F.R. § 301.6331-4(b)(2) or how it fits within the overarching statutory

7

framework. Further complicating the matter is the fact that both the drafting history of this specific provision and the IRS's interpretive guidance are phrased in the same semantic ambiguity as the regulation itself.[3] Unsurprisingly, then, neither the government nor defendants presented, in any of their seven total briefs, any regulatory authority or caselaw that, in the Court's view, squarely supports their proposed reading of § 301.6331-4(b)(2).

This limited guidance, however, is ultimately inconsequential to the resolution of the instant motions. The decisive question is not, as defendants suggest, whether the IRS's referral of the action to DOJ was untimely under a plain reading of this regulation. If it were, the government's admissions to this effect would have, in themselves, entitled defendants to judgment as a matter of law. Rather, the determinative issue here is whether the IRS's concededly premature referral serves to bar this suit and entitles defendants to summary judgment, even though the Internal Revenue Code imposes no restrictions on the IRS's ability to refer cases to DOJ while installment agreements are pending or in effect. Indeed, it is black-letter law that a regulation may not serve to modify a statute, *Koshland v. Helvering,* 298 U.S. 441, 447, 56 S.Ct. 767, 770, 80 L.Ed. 1268 (1936), or to add to a statute "something which is not there." *United States v. Calamaro,* 354 U.S. 351, 359, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394 (1957). Treasury Regulations must, therefore, be viewed "in the context of the statute they are

---

[3] When the subject regulations were originally proposed in April 2002, this provision stated: "The IRS will not begin a proceeding in court for the collection of any liability to which an installment agreement or proposed installment agreement relates against a person named in that installment agreement while levy is prohibited . . . ." *See* Prop. Treas. Reg. § 301.6331-4, 67 Fed. Reg. 18841, 18842 (Apr. 17, 2002) (emphasis added). In announcing the revised regulations, the IRS explained: "The proposed regulations provided that the IRS cannot institute a court proceeding against the taxpayer named in the installment agreement to collect the tax covered by the installment agreement. In the final regulations, this provision has been clarified. It now states that the IRS may not refer a case to the Department of Justice to collect an unpaid tax through a judicial proceeding while levy is prohibited by these regulations." Treas. Reg. § 301.6331-4, 243 Fed. Reg. 77416, 77416 (Dec. 18, 2002).

8

designed to explicate; there is no power to amend a statute by regulation." *Iglesias v. United States*, 848 F.2d 362, 367 (2d Cir. 1988) (cleaned up). A regulation that "operates to create a rule out of harmony with the statute[] is a mere nullity." *United States v. Kahn*, 5 F.4th 167, 176 (2d Cir. 2021) (quotations omitted).

Defendants do not, nor could they, argue that RRA or any other statute explicitly restricted either the IRS's ability to refer the Schillers' case in anticipation of a proper proceeding in court or DOJ's authority to commence the instant action after the impediments to levy were removed, as the government indisputably did here. Certainly, the IRS's referral did not violate an express provision of 26 U.S.C. § 6331(k), which makes no mention of IRS referrals.[4]

Accordingly, to interpret § 301.6331-4(b)(2) as barring a collection action exclusively because of a technical, non-prejudicial error on the part of the government would be to add to the statute "something which is not there." *Calamaro*, 354 U.S. at 359. The IRS referred the Schillers' case either on, immediately before, or immediately after September 19, 2018, the date that the IRS appears to have made the determination to reject the Schillers' proposed installment agreement. *See* Gov't SOF ¶ 6; Gov't Ex. 3. Defendants do not contest the stated rationale for the denial. They, likewise, do not contend they suffered any harm as a result of, or were even aware of, the fact that the IRS sent their case to DOJ for suit before, rather than after, October 30, 2018. Instead, defendants urge the Court to interpret this regulation as prohibiting all

---

[4] There is also no suggestion that DOJ's filing of this lawsuit was barred by 26 U.S.C. § 7401, which obligates the Attorney General to obtain authorization from the Treasury Secretary before beginning an action to collect unpaid taxes. To the contrary, that the IRS *did* authorize this collection action, thus satisfying § 7401, is the keystone of the Schillers' argument in support of their motion.

9

collection cases that the IRS referred to DOJ before an installment agreement request had been formally rejected, even those in which DOJ waited to file suit until 31 days after the delinquent taxpayers were formally notified of the rejection and given an opportunity to appeal.

To be sure, by enacting the RRA, which was passed in response to highly publicized criticisms of the IRS's collection methods, Congress ensured that all taxpayers who take affirmative steps to satisfy their outstanding tax liabilities are entitled to robust, procedural safeguards prior to IRS action.  *See, e.g.*, *Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 624 (6th Cir. 2005); *Mesa Oil, Inc. v. United States*, 2000 WL 1745280, *2 (D. Colo. 2000) (reviewing legislative history of RRA and detailing the law's copious taxpayer protections); *c.f.*, *Boechler, P.C. v. Commissioner of Internal Revenue*, __ U.S. __, 142 S. Ct. 1493, 1500 (2022) (explaining that § 6330, which entitles taxpayers to notice and an opportunity for a hearing before levy, is "a section of the Tax Code that is unusually protective of taxpayers and a scheme in which laymen, unassisted by trained lawyers, often initiate the process" (cleaned up)).  Here, however, the IRS's premature referral did not practically deprive defendants of any such safeguards.  Although, initially, defendants' installment agreement offer was not properly considered by the IRS, the proposal was indisputably reviewed and considered by the agency in late 2018.  *See* Defs. SOF ¶ 6–7; Gov't Ex. 3 at 1.  Defendants also received a detailed, written notice that explained why their installment request was rejected and clarified any confusion caused by the erroneous December 2017 acceptance.  The Schillers were then given another 30 days to appeal the denial, which they declined to do.  And, most critically, the action was not filed until after the appeal window expired and levy was no longer prohibited.  Accepting defendants' proposed reading of § 301.6331-4(b)(2) would thus be an unreasonable extension of, and plainly "out of harmony with," the taxpayer protections that the RRA does afford.

In short, were the propriety of the government's initiation of this action dependent solely

10

on the plain language of 26 C.F.R. § 301.6331-4(b)(2), the Schillers' defense may have proven successful.  However, viewing this regulation within the overarching statutory context from which it was born, as it must be, it is clear that the government has the better of the argument.  The at-issue provision restricts levies and concerns the timing of the commencement of a court proceeding, not the timing of the referral itself.  Thus, there is no violation when the collection action is filed in court on a day that levy was permissible under 26 U.S.C. § 6331(k).  As a result, that the IRS referred this case to DOJ while defendants' installment agreement request was pending does not, standing alone, bar this action.  Since the application of this regulation is the sole issue presented by both motions and can be resolved as a matter of law, the government is entitled to summary judgment on that basis.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is denied, and the government's cross-motion for summary judgment is granted.

The Clerk of Court is directed to enter judgment in favor of the United States of America in the amount of $112,324.18, plus statutory additions and interest accruing from and after September 30, 2020, and to close this case.

So Ordered.

Dated: Brooklyn, New York
May 29, 2022

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge